BOSTON EDISON COMPANY *vs.* BOSTON REDEVELOPMENT
AUTHORITY & others.[1]

Suffolk. May 2, 1978. — August 14, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, LIACOS, & ABRAMS, JJ.

*Boston Redevelopment Authority. Redevelopment of Land. Notice.*

A finding by the Boston Redevelopment Authority that changes in a
project it had previously approved were not "fundamental" within
the meaning of St. 1960, c. 652, § 13, twelfth paragraph, as amend-
ed through St. 1967, c. 127, § 3, was supported by substantial evi-
dence where none of the revisions involved a substantial change in
the type or character of the buildings or the nature or extent of the
project even though the cost estimates of the project were nearly
doubled. [153–154] QUIRICO, J., concurring on the ground that the
plaintiff, a public utility company, had no standing to challenge the
authority's decision.

CIVIL ACTION commenced in the Supreme Judicial
Court for the county of Suffolk on November 9, 1977.

The case was reported by *Abrams, J.*

*David R. Pokross (William C. Lance & Robert H. Quinn*
with him) for the Boston Edison Company.

*Robert W. Meserve (Verne W. Vance, Jr., & Edward J.*
*Lonergan* with him) for the Boston Redevelopment Au-
thority & others.

BRAUCHER, J. In October, 1975, the Boston Redevelop-
ment Authority (BRA) approved an urban renewal proj-
ect proposed by some of the other defendants (the appli-
cants) and we later upheld the BRA action against a chal-
lenge by the Boston Edison Company (Edison). *Boston*

---

[1] Medical Area Service Corporation; President and Fellows of Har-
vard College; L. Edward Lashman, Jr.; Citicorp Translease, Inc.; Medi-
cal Area Total Energy Plant, Inc.

*Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37 (1977). In October, 1977, the BRA and the mayor of Boston approved changes in the project, finding that there was no "fundamental" change. Edison challenges that decision, and we uphold it.

The BRA approved the changes on October 6, 1977, following a public hearing on June 29, 1977. Pursuant to St. 1960, c. 652, § 13, twelfth paragraph, and G. L. c. 249, § 4, Edison filed in the Supreme Judicial Court for the county of Suffolk a complaint in a civil action in the nature of certiorari to correct errors of law in the BRA proceedings. A single justice of this court reserved and reported the case for decision by the full court on the pleadings and the administrative record.

We summarize the 1977 report and decision of the BRA. A visual comparison of the models of the project as originally approved and as redesigned confirms that none of the changes involves even a substantial change in the type or character of the buildings or the nature or extent of the project. Height will increase from 106 to 139 feet above grade, mostly by reason of sound attenuation equipment. There will be no substantial change of use; the project will still serve the same demands from the same users for electricity, steam and chilled water. Centralized collection and incineration systems for solid wastes are eliminated because the fuel economies were determined to be negligible and air quality would have suffered. The estimated cost is increased from $56 million to $109 million by reason of costs of redesign, additional equipment, inflation due to delays, legal fees, and financing costs.

Edison argues that, in the 1975 hearings leading to BRA approval of the original project, it questioned the applicants' statements as to the financial feasibility and benefits of the project, the reliability of their cost estimates, their claims of savings in supplying electric requirements, in fuel oil, and in truck trips, and the economic feasibility of the incinerator. Later, Edison says,

the applicants discovered that they had made substantial mistakes with respect to these matters, and that the original project was unworkable. The resulting changes are substantial in magnitude and directly relevant to the standards for original project approval. Hence, the argument concludes, the changes must be treated as "fundamental."

1. *"Fundamental" change.* After BRA approval of a project, the developer "may apply . . . for leave to *change the type and character of the buildings* on such project; and the authority may grant such application unless in its opinion the proposed change is a *fundamental* one, in which case the authority shall proceed as if such application to change were an application for the original approval of the project" (emphasis supplied). St. 1960, c. 652, § 13, twelfth paragraph, as amended through St. 1967, c. 127, § 3. Cf. St. 1960, c. 652, § 13, fifth paragraph ("fundamental" change after BRA disapproval); *id.*, § 13A, inserted by St. 1965, c. 859, § 3, and amended by St. 1966, c. 421, § 6 ("fundamental" change on acquisition of project by new developer); G. L. c. 121A, §§ 6, 13, 18B, prior to amendments by St. 1975, c. 827, §§ 3, 9, 14 (similar provisions applicable to private redevelopment projects outside Boston).

On a number of occasions we have considered St. 1960, c. 652, and G. L. c. 121A and its predecessors. *Boston Edison Co.* v. *Boston Redevelopment Auth., supra. Prudential Ins. Co.* v. *Boston,* 369 Mass. 542 (1976). *Dodge* v. *Prudential Ins. Co.,* 343 Mass. 375 (1961). We have not had occasion to apply the provisions with respect to "fundamental" changes. In *Commissioner of the Dept. of Community Affairs* v. *Boston Redevelopment Auth.,* 362 Mass. 602, 613-614 (1972) (the Charles River Park case), however, we referred to these and other statutes, by way of analogy, as requiring approval by the Department of Community Affairs (DCA) "of 'fundamental' or 'substantial' revisions." The issue in the Charles River Park case was whether DCA approval was required for changes in

a publicly initiated urban renewal project, a point on which the predecessor statute to G. L. c. 121B was silent. We held that the revisions in question did not "constitute a substantial change," and left open the question whether DCA approval might be required in "situations in which the nature and magnitude of the revisions of a plan could fundamentally alter the essence of the project." *Id.* at 618.

We reject Edison's contention that a change is "fundamental" if it "is substantial in magnitude and is directly relevant to one or more of the standards for original project approval and may thereby materially alter the project with respect to its compliance with those standards." Such a rule would extend beyond the statutory provision for "fundamental" changes in "the type and character of the buildings" to changes in cost estimates and other features of the plan that in no sense "fundamentally" alter its "essence." The result would be to invite wasteful and dilatory relitigation of the entire project whenever any significant feature of the plan was changed.

Edison points to § 304 of the rules and regulations of the DCA, defining "fundamental" changes for the purposes of G. L. c. 121A, §§ 13 and 18B. That definition, applicable to privately initiated urban renewal projects outside Boston, is not applicable to Boston projects. Moreover, it is significantly different from the formulation for which Edison contends, and it seems clear that the BRA would have made the same decision if it had applied the DCA regulation.

The BRA, of course, could have disapproved the changes even though they were not "fundamental," but Edison has not challenged the BRA decision on any other ground. We conclude that the decision that they were not "fundamental" was supported by substantial evidence, was not arbitrary or capricious or an abuse of discretion, and was in accordance with law.

2. *Ex parte submissions.* Following the BRA hearing and before the decision, representatives of the applicants

(not their counsel) made submissions to the BRA without giving copies or notice to Edison. Edison contends that the result was to deny it due process of law. The contention was not raised by the pleadings, and is not properly within the traditional scope of an action in the nature of certiorari. Cf. *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 49 n.8 (1977). Nevertheless, in the interest of finality of decision, we consider the contention on the merits and find that any error in this respect did not prejudice Edison's substantial rights. We have examined the submissions in question, and find in them only repetition of points to which Edison had fully responded. Cf. *Save the Bay, Inc.* v. *Department of Pub. Utils.*, 366 Mass. 667, 687 (1975).

3. *Other issues.* We find it unnecessary to consider the defendants' claim that the BRA decision was proper even if the changes in the project are treated as fundamental.

4. *Disposition.* The case is remanded to the county court for the entry of judgment affirming the decision of the BRA.

*So ordered.*

QUIRICO, J. (concurring in the result). I concur with the result in this action for the same reason that I concurred in the previous action between the same parties, *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 76-77 (1977). The reason on which I relied then, and on which I rely again, is that in my opinion the Boston Edison Company has no standing to challenge the Boston Redevelopment Authority's decision approving the urban renewal project in question. See St. 1960, c. 652, § 13, as appearing in St. 1965, c. 859, § 2.