CITY COAL COMPANY OF SPRINGFIELD, INC., & another[1] *vs.*
EDWARD J. NOONAN.

Hampden. May 10, 2001. - July 26, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Judgment,* Interest. *Interest. Practice, Civil,* Interest. *Negotiable Instruments,*
Indorsement. *Fraud. Consumer Protection Act,* Interest.

On remand to the Superior Court for a determination of the manner in which
a payment by the defendant to the plaintiff in a civil case should be al-
located in satisfaction of two portions of a judgment, the remand judge, in
determining whether the defendant's $188,742.98 payment satisfied a por-
tion of the judgment, erred in relying on arguably contrary language from
case law rather than following the precise analytical formula set forth by
this court for application on remand. [711-712]
On remand to the Superior Court for a determination of the manner in which
a payment by the defendant to the plaintiff in a civil case should be al-
located in satisfaction of two portions of a judgment, the judge properly al-
located the defendant's payment of $111,257.02 in satisfaction of a portion
of the judgment, in the absence of any express agreement to the contrary,
to postjudgment interest first and then to the remainder of the sum of the
principal and prejudgment interest. [713-714]
The appropriate date of payment of a check delivered on February 24, 1992,
by the defendant in a civil case, in satisfaction of a portion of a judgment,
was the date of delivery rather than the date several months later when the
plaintiff cashed the check. [714-715]
On remand to the Superior Court for a determination of the manner in which
a payment by the defendant to the plaintiff in a civil case should be al-
located in satisfaction of two portions of a judgment, the judge properly
concluded that prejudgment interest should accrue solely on the compensa-
tory component of the award and not on the punitive damages component
under G. L. c. 93A [715-717]; however, with respect to certain postjudg-
ment interest, the judge erred in tolling the computation of such interest
prior to the judgment being fully satisfied [717].

CIVIL ACTION commenced in the Superior Court Department on
August 7, 1986.

Following review by this court, 424 Mass. 693 (1997), further
proceedings were had before *Bertha D. Josephson,* J.

[1]Tinco Fuel, Inc.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael D. Parker* for the defendant.

*Michael K. Callan* for the plaintiffs.

IRELAND, J. After nearly fifteen years of litigation and numerous hearings in both the trial and appellate courts, we consider, again, how to interpret the terms of a Superior Court judgment governing payments due to the respective parties. See *City Coal Co. of Springfield* v. *Noonan*, 36 Mass. App. Ct. 1102 (1994) (*City Coal I*) (affirming nine-paragraph Superior Court judgment). In *City Coal Co. of Springfield* v. *Noonan*, 424 Mass. 693, 696-697 (1997) (*City Coal II*), we answered questions regarding the calculation of postjudgment interest arising from certain components of that judgment.[2] In regard to the first two paragraphs of the judgment, in *City Coal II* we also considered how to allocate two payments made by Edward J. Noonan to City Coal. Given the limited record at that time, we reluctantly "remand[ed] the case to the Superior Court to determine how the payment of $300,000 should be treated in light of this opinion." *Id.* at 697.

On March 23, 1999, a Superior Court judge (remand judge) issued an order governing the $300,000 payment pursuant to paragraphs one and two of the original judgment, as well as other disputed details arising under paragraphs five, six, and seven of that judgment. Both parties appealed from the remand judge's order, and we transferred the case to this court on our own motion. We review the remand judge's consideration and resolution of the following questions: (a) whether Noonan's $188,742.98 payment satisfied paragraph one of the Superior Court judgment; (b) whether Noonan's $111,257.02 check should be allocated first to postjudgment interest and then to principal; and (c) whether prejudgment interest should be awarded on the $150,000 owed by City Coal pursuant to paragraph six. Because we conclude that the remand judge exceeded her authority by reaching a result contrary to our explicit instructions regarding paragraph one, we vacate that

[2]As was the case then, "[t]he circumstances of the underlying dispute are not important to the resolution of the issues on appeal." *City Coal Co. of Springfield* v. *Noonan*, 424 Mass. 693, 694 (1997) (*City Coal II*).

aspect of her order. Additionally, "in the interest of finality of decision," *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 376 Mass. 151, 155 (1978), we consider and affirm the remaining sections of the remand judge's order, subject to certain modifications set forth below.

1. *The $188,742.98 Check and Paragraph One of the Judgment.*

We first consider whether Noonan's check to City Coal in the amount of $188,742.98 discharged his obligations under paragraph one of the Superior Court judgment.[3] When issued on February 24, 1992, the check bore a restrictive indorsement stating: "Re: Civil Action # 86-1238 Endorsement and payment constitutes satisfaction in full of amount due under para (1), Judgment of 1/10/91." The indorsement was subsequently crossed out and the check cashed by City Coal.[4] In the final paragraph of *City Coal II, supra* at 696-697, we concluded: "We cannot discern what happened in this case. . . . If this [i.e., the crossing out of the restrictive indorsement] was a unilateral action, it was ineffective. Absent an express agreement to the contrary, the payment purportedly in satisfaction of the amount owed on the first paragraph of the judgment should have been recognized as satisfying that obligation. We have no alternative on the state of the record but to remand the case to the Superior Court to determine how the payment of the $300,000 [i.e., this check and the second check for $111,257.02] should be treated in light of this opinion."

After a January 30, 1998, hearing, the remand judge "determined that the striking of the statement on the first check was a unilateral action." By our explicit instructions, we intended such a finding to be outcome-determinative, but the remand judge went on to refer to *Rothenberg* v. *Boston Hous. Auth.*, 335 Mass. 597, 600 (1957): "An acknowledgment of satisfaction of a judgment indorsed upon an execution has been

---

[3]Paragraph one orders City Coal to recover from Noonan "on Count I of the Amended Complaint the sum of $113,263.18 with interest according to law."

[4]The record suggests that City Coal was represented by counsel at the time the check was accepted. If City Coal suspected any detrimental legal consequences, it could have refused Noonan's tender of payment.

held to be invalid where made in consideration of the payment of a smaller sum than the amount due." She then found that, because "$188,742.98 'is a smaller sum than due upon the judgment, it is apparent from the face of the execution that the judgment was not satisfied.' *Smith* v. *Johnson*, 224 Mass. 50, 52 (1916)." To make up the difference, the judge ordered Noonan to pay City Coal "$8,058.03, plus postjudgment interest at the rate of twelve percent (12%) per year from February 24, 1992 through August 17, 1998."

Having considered this indorsement in *City Coal II*, we set forth a precise analytical formula to be applied on remand. Consistent with that formula, once it became clear to the remand judge that the underlying conditions were fulfilled, namely (1) that the payment was not governed by an express agreement; and (2) that the crossing out was undertaken unilaterally by City Coal; then the payment "should have been recognized as satisfying [the paragraph one] obligation." *Id.* In other words, if those factors were present, the judge was not authorized to reach a different conclusion with regard to paragraph one. See *Thomas O'Connor & Co.* v. *Medford*, 20 Mass. App. Ct. 761, 762-763 (1985) (remand not intended to authorize judge to take evidence regarding increase of previous award).

In the circumstances of this case, the remand judge's reference to *Rothenberg* v. *Boston Hous. Auth.*, *supra.*, while well-intended, was improper. Where neither party cited to *Rothenberg* v. *Boston Hous. Auth.*, *supra*, in their original briefs to this court or in a petition for rehearing, our remand instructions became the governing "law of the case" and should not have been reconsidered by the remand judge. See *Lunn & Sweet Co.* v. *Wolfman*, 268 Mass. 345, 349 (1929) (law of case binding upon other tribunals dealing with case). Accordingly, it was error for her to rely on the arguably contrary language from *Rothenberg* v. *Boston Hous. Auth.*, *supra*. For these reasons, the remand judge's order awarding $8,058.03 and postjudgment interest thereon is vacated. The matter is remanded for entry of an order that Noonan's $188,742.88 payment satisfied paragraph one of the original judgment.

2. *The $111,257.02 Check and Paragraph Two of the Judgment.*[5]

a. *Allocation of payment.* On February 24, 1992, Noonan sent a check in the amount of $111,257.02 to City Coal. This check bore a restrictive indorsement stating, "Re: Case #86-1238 Partial payment of $451,821.47 under para (2), Judgment dated 1/10/91." The parties disputed how the funds should be allocated among principal, prejudgment interest, and postjudgment interest. In light of the indorsement, Noonan asserted that the second check "should be applied to the principal portion of the amount due under paragraph 2 of the [original] judgment. City Coal [countered] that it should first be applied to the interest accrued on the principal." Declining to read the indorsement as "an express agreement that the payment is to be applied to the principal before the interest," the remand judge ordered that the check "be applied to the outstanding interest obligation first, then to the principal." We agree and conclude that the payment was properly allocated to postjudgment interest first and then to the remainder of the sum of the principal and prejudgment interest.

It is "well established that, when a debtor pays money to a creditor, absent any express agreement to the contrary, the payment is first applied to the outstanding interest obligation and then to principal," *City Coal II, supra* at 696, citing *Plasko* v. *Orser*, 373 Mass. 40, 42-43 (1977), and cases cited, and therefore we do not find fault with the judge's conclusion. The indorsement's explicit reference to the amount of the principal, $451,821.47, does not rise to an "express agreement" between the parties designed to govern the allocation of funds among various sections of the judgment.[6] *City Coal II, supra* (when money is owed under separate sections of judgment, "[t]he

---

[5]Paragraph two of the Superior Court judgment ordered City Coal to recover "the sum of $451,821.47, plus interest through January 10, 1991, in the amount of $202,569.90, plus attorney's fees in the amount of $10,000."

[6]Given the indorsement's lack of specificity, we similarly decline to interpret City Coal's cashing of the check as a manifestation of its intent to adhere to the debtor's allocation wishes. Contrary to Noonan's assertion that this view will discourage debtors from executing partial payments on outstanding debt, we note that the parties may trump this common-law presumption by expressly agreeing to allocate payments as they see fit. See *City Coal II, supra* at 696.

general rule is that a debtor may select which debt the payment should be applied toward and, if the debtor makes no explicit allocation, the creditor can make the choice"). Where neither the indorsement nor any other documentation restricted the check to the principal component of paragraph two, City Coal, as creditor, was free to select the method of allocation. The judge's order with regard to the payment allocation under paragraph two is affirmed.

b. *Date of tender.* City Coal delayed cashing the paragraph two check until several months after it was tendered. The parties disagree as to the date of its payment.[7] Although *City Coal II, supra* at 696, stated that this check wás "delivered . . . on February 24, 1992, payable to [City Coal]," the remand judge fixed April 3, 1992, as the date of payment. In reaching that conclusion, she focused on the fact that "it was necessary for City Coal to obtain the confirmation from Noonan (to avoid the implication of an express agreement between the parties to apply the payment to the principal)."[8] On appeal, Noonan counters that "City Coal cannot control the date of delivery of payment . . . by simply not timely depositing Noonan's check." We disagree with the remand judge's conclusion and fix February 24, 1992, as the appropriate date of payment.

The text of the indorsement does not amount to a conditional promise capable of compromising the negotiability of the instrument. See G. L. c. 106, §§ 3-104, 3-106 (*a*) (i) (express condition to payment). See also *Goes* v. *Feldman,* 8 Mass. App. Ct. 84, 86, 92 (1979) (indorsement read "by cashing of this check, we release [parties] for all claims . . . in either equity or law"; not tender of payment but settlement offer). If City Coal feared the legal ramifications of cashing the check as written, they could have refused the instrument. See

---

[7]According to the remand judge's findings, "City Coal delayed cashing Noonan's checks until it obtained an agreement that Noonan would not assert the cashing of the checks as a waiver of City Coal's right to appeal." See *City Coal II, supra* at 697 n.3 (check cashed on April 3, 1992, once "legal issues surrounding the effect of the payment were resolved" after a hearing "of which no record exists"). The date of payment must be determined in order to compute interest properly.

[8]The judge's terse ruling on this matter cites neither case law nor the governing provisions of the Uniform Commercial Code, as set forth in G. L. c. 106.

*Community Bldrs., Inc.* v. *Indian Motocycle Assocs., Inc.*, 44 Mass. App. Ct. 537, 545, 550 (1998) (check containing indorsement requiring surrender of all remaining claims returned uncashed). To hold otherwise would empower payees to manipulate the time of payment by refusing to negotiate the instrument in a timely fashion. Absent any other conditions or promises, Noonan's paragraph two obligations were discharged by the amount of the payment as of the date of delivery. See G. L. c. 106, § 3-310 (*b*) (1) (uncertified check taken for obligation, suspends obligation). In this regard, the remand judge's order regarding the payment date on the $111,257.02 check is vacated.

3. *Paragraph Six and Interest on Treble Damages.*[9]

After finding a financial loss in the amount of $50,000, the trial judge ruled, "The sale [of an employment contract] was therefore in violation of [G. L. c. 231, § 85J]. It follows that Noonan is entitled to treble damages by virtue of that statute, plus attorney's fees by reason of the 93A violation." Accordingly, as set forth in paragraph six of the Superior Court judgment, the judgment required City Coal to pay Noonan "on Count II(b) of the counterclaim the sum of $150,000.00, plus attorney's fees in the amount of $17,000.00, *plus interest according to law*" (emphasis supplied). On remand, from our decision in *City Coal II, supra,* the parties debated whether the treble damages segment of the paragraph six award arose from G. L. c. § 93A (consumer protection) or G. L. c. 231, § 85J (fraud), and how, if at all, that determination affects the accrual of prejudgment interest. The remand judge concluded "that the actual damages were . . . $50,000, and that $100,000 represented punitive damages [under G. L. c. 93A]." In reaching that result, the remand judge acknowledged that paragraph six of the

---

[9]Both parties offer procedural reasons why we should not reach any questions surrounding paragraph six. Without commenting on the scope of the remand judge's authority (as Noonan invites us to do) or any issues of waiver (as City Coal invites us to do), and "in the interest of finality of decision, we consider the contention on the merits." *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 376 Mass. 151, 155 (1978). In light of the duration of this litigation and because the question of treble damages under G. L. c. 231, § 85J, is "likely to recur, is of general importance, and has been fully briefed . . . we elect to discuss it." *Quegan* v. *Massachusetts Parole Bd.*, 423 Mass. 834, 836 (1996).

award was made on "the 93A part [and] the judgment allowed $17,000 in attorney's fees which are not allowable under G. L. c. 231, § 85J." We concur with her conclusion that prejudgment interest accrues solely on the $50,000 nonpunitive portion of paragraph six.

Even if, as Noonan asserts, the trial judge awarded the entire paragraph six amount under G. L. c. 231, § 85J,[10] he would not be entitled to prejudgment interest on the multiple damages portion. See *McEvoy Travel Bur., Inc.* v. *Norton Co.*, 408 Mass. 704, 716-719 & n.12 (1990); *Briggs* v. *Carol Cars, Inc.*, 407 Mass. 391, 396 n.2 (1990) (interest on multiple damages portion of § 85 awards accrue only from date of judgment); *Makino, U.S.A., Inc.* v. *Metlife Capital Credit Corp.*, 25 Mass. App. Ct. 302, 320-321 (1987); J.L. Shapiro, M.G. Perlin, & J.M. Connors, Collection Law § 7.26 & n.1, at 287 (3d ed. 2000). "Prejudgment interest, as is well understood, compensates the prevailing party for loss of the use of money that party, as determined by the judgment, should have had in the first place and not been obliged to chase. In that way compensatory damages are truly compensatory and, in monetary terms, the winner is no less well off for the chase. . . . No similar purpose would be served by imposing interest on punitive damages which, as we have seen, have a purpose beyond restoring to a plaintiff what should have been his. Indeed, to add interest on punitive damages in a c. 93A case would have the flavor of unseemly piling on." (Citation omitted.) *Makino, U.S.A., Inc.* v. *Metlife Capital Credit Corp., supra*. See *McEvoy Travel Bur., Inc.* v. *Norton Co., supra* at 716 ("We are satisfied that the rule in *Makino* is the correct one"). We see no reason why treble damages awarded under G. L. c. 231, § 85J, ought to be exempted from this principle. See *id.* at 718 (comparing G. L. c. 231, § 85J, with G. L. c. 93A).[11] Thus, whether the trial judge relied on one statute over the other is of no import. We therefore af-

---

[10]Section 85J provides: "Whoever, by deceit or fraud, sells personal property shall be liable in tort to a purchaser in treble the amount of damages sustained by him."

[11]Noonan's attempt to distinguish the treble damages awarded under G. L. c. 231, § 85J, from those awarded under other comparable statutes, i.e., G. L. c. 151B, § 9 (if act "committed with knowledge" recovery shall be "up to three" times actual damages); G. L. c. 93A, § 11 (if act "willful or knowing"

firm the remand judge's conclusion and order prejudgment interest to accrue solely on the $50,000 compensatory component of the paragraph six award.

4. *Tolling of Postjudgment Interest.*

With respect to paragraphs one and five of the judgment, the remand judge ordered postjudgment interest to be computed "through August 17, 1998." The judge did not explain her rationale for selecting that date. Pursuant to G. L. c. 235, § 8, postjudgment interest accrues until the judgment is fully satisfied. See J.L. Shapiro, *supra* at § 10.22 n.1, at 412-413. Regarding paragraph one, the question is moot because that judgment was satisfied in full by Noonan's payment. As to paragraph five, it was error for the remand judge to toll the computation of postjudgment interest on the underlying amount. While the amount is minuscule (one dollar), the imposed August 17, 1998, bar is vacated.

5. *Conclusion.*

With the intent of concluding this protracted litigation, we remand the matter to the Superior Court with the following instructions:

a. With regard to paragraph one, the remand judge's order is vacated. Noonan discharged its obligations by the payment of the $188,742.98 check.

b. With regard to paragraph two, we affirm the remand judge's order, but fix February 24, 1992, as the payment date for the purposes of computing postjudgment interest.

c. With regard to paragraph five, we affirm the remand judge's order, but vacate the order tolling postjudgment interest.

d. With regard to paragraph six, we affirm the remand judge's allocation of compensatory and punitive damages.

*So ordered.*

---

recovery shall be "up to three" times actual damages); G. L. c. 186, § 14 (liable for actual damages or "three month's rent, whichever is greater), misses the mark. Multiple damages are punitive in nature whether the assessment is mandatory or discretionary.