NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-765

KEITH R. BARNETT, trustee,[1] & others[2]

vs.

MICHAEL D. MYEROW, trustee,[3] & others.[4]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs appeal from a Land Court judgment following the third trial in a case initiated nearly two decades ago seeking to quiet title to a beach in Edgartown. The plaintiffs' claims asserting ownership interests in the beach and certain

---

[1] Of the Oyster Pond EP Trust.

[2] Richard L. Friedman; Allen W. Norton, Judith Norton, and Melissa Norton Vincent, trustees of the Quiet Oaks Realty Trust; Albert White, Toni White Hanover, and Shauna White Smith, individually and as trustees of the Quampacky Trust; Mark B. Norton; Debra White Scott; and Lisa White.

[3] Of the Botar Realty Trust, Rabor Realty Trust, and Tarob Realty Trust.

[4] Short Point Holdings, LLC; Patricia C. Post, Jeffrey B. Flynn, and Richard B. Keeler, trustees of the Pohogonot Trust, interveners; Pamela Kohlberg, trustee of Job's Neck Trust, intervener; and Andrew Kohlberg, trustee of High Road Trust, intervener.

rights of way leading to the beach have already been resolved against them.  By way of the instant appeal, the plaintiffs contend that the Land Court judge erred in determining that the defendants, rather than the Commonwealth, own the beach.  The plaintiffs claim that the beach, which sits on what used to be the bed of a great pond, is owned by the Commonwealth and held in trust for the public.  We affirm.

Background.  The background facts of this case are set forth in two prior opinions ending in remand orders, White v. Hartigan, 464 Mass. 400 (2013), and Barnett v. Myerow, 95 Mass. App. Ct. 730 (2019).  The specific facts relevant to this decision are set forth below.  Some facts are reserved for discussion.

The disputed beach is a 1.7-mile stretch of land on the southern shoreline of Martha's Vineyard, bordered by the Atlantic Ocean to the south and several ponds to the north. Since at least the mid-nineteenth century, erosion has pushed the beach north and reshaped the ponds' shorelines.

All title interests in the beach originate from two families, the Flynns and the Nortons, who historically owned property upland from the beach.  While not all parties are members of either family, the defendants' ownership interests trace back to the Flynns, and the plaintiffs' ownership

2

interests trace back to the Nortons.  Both families used the beach until a title dispute arose in the early 1980s.

The plaintiffs brought this action in 2004 claiming ownership of a fractional interest in the beach or a prescriptive easement to access the beach via rights of way over the defendants' properties.[5]  In 2009, a Land Court judge granted summary judgment to the defendants on the plaintiffs' title claim, concluding that due to erosion, the beach to which the plaintiffs held a title interest was now completely submerged in the Atlantic Ocean.  The judge also noted, but declined to address, the plaintiffs' attempt to assert that the beach had migrated onto the former location of a great pond and was therefore owned by the Commonwealth as public property:[6]

> "in the matter presently pending before the Court, the parties do not seek a determination of all rights in the Beach, but merely, pursuant to Count I of the plaintiffs' complaint, to declare the rights of the plaintiffs in the Beach.  The possibility that another party may have interest in the Beach is entirely possible and not foreclosed by this decision.  Therefore, the plaintiffs' argument is inappropriate, and the Court makes no determination on this issue, at this time."

---

[5] None of the plaintiffs' properties abut the beach but some of the defendants' properties do.

[6] Hereinafter, we refer to this claim as "the great ponds issue."  A great pond is a pond that exceeds ten acres in its natural state.  G. L. c. 91, § 35.  With some exceptions, the waters of a great pond and the land comprising its bed belong to the Commonwealth and are held in trust for public uses.  See Opinion of the Justices to the Senate, 474 Mass. 1201, 1203 (2016); Kubic v. Audette, 98 Mass. App. Ct. 289, 297-298 (2020).

3

In 2010, the case went to trial on the remaining issue whether the plaintiffs had acquired a prescriptive easement to use the beach or any of the rights of way that lead to the beach. The defendants moved to exclude expert evidence on whether the location to which the beach had migrated was the former location of a great pond, reminding the judge that his summary judgment ruling "said that Commonwealth ownership was not an issue in the case and . . . [the defendants] believe that that continues to be the case." The plaintiffs' counsel opposed the motion but stated that he "agree[d] with [the defendants' counsel] that as to this trial" the judge was "not about to decide who actually is the owner of the portions of the barrier beach which migrated into the ponds." The plaintiffs' counsel urged the judge to allow the great ponds evidence to be presented anyway, stating that even though "there are legal issues that are not expected to be addressed in this case . . ., for the completeness of the record, it seems advisable to have and warranted to have these various facts" about great ponds come into the record, "[s]o if there is a future dispute as to whether the plaintiffs can be thrown off the beach if they lose all issues in this case, you know, there may have to be some proceeding that deals with the [littoral] owners."[7] The

---

[7] The defendants' counsel presciently told the judge that he suspected the plaintiffs were seeking to admit the great ponds

4

defendants' counsel responded that "as long as it's clear, clear beyond a shadow of a doubt, that the issue of beach ownership is not involved in this case and that we're not creating some record for some other case in the future that either these plaintiffs or the Commonwealth is contemplating, then I don't really care that you know it's a great pond."  The judge subsequently reiterated, without objection, his understanding that the trial "was supposed to be limited to prescription." Following the thirteen-day trial, judgment entered for the defendants on the plaintiffs' prescriptive easement claim.

The Supreme Judicial Court (SJC) granted the plaintiffs' application for direct appellate review, and affirmed so much of the judgment as declared that the plaintiffs did not have a title interest in the beach but vacated the ruling on the prescriptive easement claim due to insufficient factual findings.  See White, 464 Mass. at 402, 423.  In separate footnotes, the SJC clarified that the plaintiffs had "appealed only as to their title claim and their prescriptive easement claim to the beach," id. at 402 n.6, and expressly declined to

evidence for "a far more insidious reason" than completeness of the record, suggesting that the real reason the plaintiffs sought to admit the great ponds evidence was to create a factual record that would provide an additional avenue to oppose any efforts by the defendants to exclude the plaintiffs from the beach in the event the defendants prevailed on the prescriptive easement claim.

5

consider any interest the Commonwealth may have in the parts of the beach that had migrated into great pond beds.  Id. at 406 n.12.

After the case was remanded, it was assigned to a different Land Court judge (second judge), who "ultimately determined that neither a new trial nor further evidentiary hearing would be necessary, and that [she] would adjudicate the prescriptive easement claim and make the subsidiary findings based upon the existing trial record."  On making those findings, the second judge also concluded that the plaintiffs had not established a prescriptive easement.  On appeal, this court affirmed the finding of no easement by prescription in most of the beach but vacated part of the judgment, and ordered further fact finding, solely on whether the plaintiffs had an easement over the eastern end of the beach.  Barnett, 95 Mass. App. Ct. at 747.

On remand for a second time, a third Land Court judge (third judge) conducted a two-day trial before ruling that the plaintiffs had failed to establish a prescriptive easement over any part of the eastern portion of the beach.  The third judge also addressed the plaintiffs' argument that the beach is owned by the Commonwealth, expressing that "it is doubtful that this issue [was] properly before [him]," and concluding that even if it were, the defendants owned the accreted land subject to the Colonial Ordinance of 1641-1647 (Colonial Ordinance), which

grants the public rights to use the land within the high and low water mark of great ponds for fishing, fowling, and navigation, but only if the public can reach the area without trespassing. Finding that the plaintiffs had "no way to access the southern shores of the ponds without trespassing over defendants' land," he concluded that the plaintiffs' rights under the Colonial Ordinance were "useless."

Discussion. The plaintiffs' sole challenge on appeal is to the third judge's finding that the defendants own the accreted land comprising the beach, arguing that the beach lies on the bed of a former great pond and is therefore owned by the Commonwealth and accessible to the public. The defendants argue that the great ponds issue was not only outside the scope of the second remand order but has also been waived. The defendants further contend that the plaintiffs' argument lacks substantive merit. The defendants' arguments are persuasive.

1. Second remand order. "It is the duty of the trial court, unless in its discretion it permits new issues to be raised, to follow implicitly the terms of the rescript and not to travel outside what is there laid down, read in the light of the opinion on which it is founded." Lannin v. Buckley, 268 Mass. 106, 111 (1929). Accord City Coal Co. of Springfield, Inc. v. Noonan, 434 Mass. 709, 712 (2001) ("our remand instructions became the governing 'law of the case' and should

7

not have been reconsidered by the remand judge").  Here, our remand instructions governing the third trial stated, in relevant part, that

> "we find no error or abuse of discretion in the [second] judge's determination that the plaintiffs have no easement by prescription in either the beach area south of Oyster Pond or the Center beach area.  However, further fact finding is required to determine whether the plaintiffs have an easement by prescription over any portion of the eastern end of the beach[.]  Those proceedings may take the form of a new trial limited to that issue. . . . Accordingly, so much of the judgment after remand as determined that the plaintiffs do not have an easement by prescription over any portion of the eastern end of the beach . . . is vacated, and the matter is remanded for further proceedings consistent with this opinion.  In all other respects, the judgment after remand is affirmed." (Emphasis added.)

Barnett, 95 Mass. App. Ct. at 747.  Affirming all but the portion of the judgment concerning a prescriptive easement over the eastern end of the beach, the order neither instructed nor permitted consideration of the great ponds issue.

Even so, before the third trial, the plaintiffs filed a motion in limine to exclude testimony contravening the law of the case concerning the definition of the "beach."  Therein, a footnote asserted that because this court had acknowledged the parties' stipulation that certain ponds abutting the beach were Commonwealth owned and had reserved their rights as to the status of others, the "[p]laintiffs view . . . the implication of the Great Ponds being Commonwealth property as part of the question remanded to this Court."  This view was incorrect.

8

While this court's opinion did, in fact, acknowledge that the parties had reserved their rights with respect to whether certain ponds were great ponds, as to the issue whether those ponds were Commonwealth owned, we noted that the first Land Court judge had "explicitly stated that the legal implications of the beach migrating into the beds of great ponds was not an issue before him." Barnett, 95 Mass. App. Ct. at 733 n.7. This court did not state that the first judge's conclusion was in error, nor was that implied where the remand order stated that the judgment below was affirmed "[i]n all . . . respects" aside from the issue whether the plaintiffs had an easement over the eastern end of the beach. Id. at 747.

In the same footnote acknowledging the parties' positions as to the status of the abutting ponds, this court also made note of the fact it had "assume[d] without deciding, as the parties seem to do, that for the purposes of this opinion, the portions of the beach that have migrated into the abutting great ponds are owned by the defendants." Barnett, 95 Mass. App. Ct. at 733 n.7. The court's view that the plaintiffs themselves had presumed the defendants owned the portions of the beach that had migrated into the beds of great ponds likewise precludes the plaintiffs' contention that the court intended the parties to litigate the implications of the Commonwealth's ownership of the beach on remand. If the court had intended this issue to be

9

litigated on remand, we would have directly addressed and corrected the parties' assumptions about ownership in the opinion.

2. _Waiver_. We next turn to the defendants' argument that the plaintiffs waived their right to assert the great ponds issue. "Waiver may occur by an express and affirmative act, or may be inferred by a party's conduct, where the conduct is 'consistent with and indicative of an intent to relinquish voluntarily a particular right [such] that no other reasonable explanation of [the] conduct is possible.'" KACT, Inc. v. Rubin, 62 Mass. App. Ct. 689, 695 (2004), quoting Attorney Gen. v. Industrial Nat'l Bank, 380 Mass. 533, 536 n.4 (1980). "Underlying the purpose of the waiver doctrine is the need to give other parties -- and the courts -- fair notice that a claim or defense is being raised." Chelsea Hous. Auth. v. McLaughlin, 482 Mass. 579, 584 (2019). In this case, the plaintiffs repeatedly failed to provide fair notice that they intended to raise the great ponds issue over the course of nearly two decades of litigation.

The operative, second amended complaint does not assert any claims related to the great ponds issue, and despite the 2009 summary judgment decision stating that the issue was not properly before the court, the plaintiffs did not attempt to bring the issue within the scope of the proceedings by seeking

10

to amend their complaint.  See Bank v. Thermo Elemental Inc.,
451 Mass. 638, 667 (2008) ("[t]he fundamental way that . . .
notice is initiated is through pleadings").  Later, during the
first trial, the plaintiffs' counsel went so far as to concede
that the trial did not concern ownership of the beach and did
not object when the judge stated that the trial was limited to
prescriptive rights.  This concession alone unequivocally waived
the plaintiffs' right to litigate the great ponds issue from
that point forward.

The SJC later remanded the case solely on the prescriptive
easement issue, and the second judge's decision, which was based
exclusively on the record of the first trial, did not even
mention the great ponds issue.  The plaintiffs did not challenge
this omission or otherwise mention it in the briefs supporting
their second appeal, and the joint pretrial memorandum the
parties submitted before the third trial did not identify the
great ponds issue within the statement of legal issues.  The
plaintiffs only briefed the issue in detail in their posttrial
submissions, after the defendants' opportunity to bring a motion
in limine to exclude evidence inconsistent with the remand order

11

or present opposing evidence had closed.[8,9]  For all of the foregoing reasons, we conclude that the great ponds issue has been waived.

3.  Merits.  We have concluded that the great ponds issue was outside the scope of the second remand order and the plaintiffs waived this issue.  Although not necessary to our decision, as to the plaintiffs' challenge to the third judge's

_____

[8] Although the plaintiffs submitted a motion in limine before the third trial asserting their belief that the great ponds issue was part of the remand order, as set forth above, that belief was incorrect.  Moreover, we agree with the defendants that a footnote in a motion in limine, standing alone, is insufficient to put the court and the parties on notice of a claim.

[9] At the end of the third trial, the plaintiffs' counsel represented that the plaintiffs "had put it in [their] pretrial memorandum that [they] would be . . . trying the great pond aspect of this" and had "certainly on appeal, briefed to the Appeals Court the great pond issue."  However, the plaintiffs' only reference to great ponds in the pretrial memorandum appeared in their list of disputed facts, which asserted that the ponds abutting the beach are great ponds, that the Commonwealth holds great ponds in the public trust, and that portions of the disputed beach are located on what was formerly the bed of a great pond.  The pretrial memorandum thus stopped short of asserting the plaintiffs' intent to present evidence that the disputed beach is owned by the Commonwealth in trust for the public because it sits on what was formerly the bed of a great pond.

The plaintiffs' only references to great ponds in their 2017 appellate briefs appeared in the factual background and simply asserted that the parties had stipulated that two of the abutting ponds "are on the list of 'Great Ponds' maintained by the Commonwealth" and that the parts of the beach abutted by great ponds are known as "barrier beaches."

12

conclusion that the beach is owned by the defendants, we note as follows.

The third judge, relying on Kubic v. Audette, 98 Mass. App. Ct. 289 (2020), emphasized that property abutting the ocean typically follows the changing waterline and that a littoral owner is entitled to newly emergent land, whether from accretion or reliction, but loses title to land lost through erosion. Based on these principles, the third judge held that the defendants owned the newly accreted land that comprises the disputed beach, subject to the public's rights under the Colonial Ordinance to use the land between the high and low water marks for fishing, fowling, and navigation, and provided that the public can access the area without trespassing. Because the plaintiffs have no way to reach the barrier beaches below the abutting ponds without trespassing on the defendants' land, the third judge concluded that the plaintiffs have no rights over any portion of the eastern section of the beach.

The cases the plaintiffs rely on to challenge the third judge's conclusion are factually distinct and do not address the ownership of permanent or naturally occurring accretions to lands that lie on a former great pond bed or a permanent reliction, as in Kubic. See, e.g., Attorney Gen. v. Vineyard Grove Co., 211 Mass. 596, 602 (1912) (artificial accretion); Attorney Gen. v. Herrick, 190 Mass. 307, 308 (1906) (disputed

13

land was island in middle of great pond not contiguous with any private property); Potter v. Howe, 141 Mass. 357, 360 (1886) (Commonwealth owned land under pond that was temporarily exposed when defendant artificially lowered water level).  We are also unpersuaded by the plaintiffs' claim that Kubic is inapplicable because in that case the Commonwealth had disavowed any claim to the disputed land.  See Kubic, 98 Mass. App. Ct. at 298.  The Commonwealth expressly declined the plaintiffs' invitation to intervene in the instant case, and therefore similarly disavowed its rights to the land at issue here.  The plaintiffs' assertions are further undermined by the public policies the SJC identified in White, 464 Mass. at 407, i.e., "the interest in preserving the water-abutting nature of littoral property," the interest in promoting stability in title, and "the equitable principle that a property owner who enjoys the benefit of an increase in property when waterlines shift seaward ought also to bear the burden of a decrease in property when waterlines shift landward."  Accordingly, the third judge properly concluded that

14

the newly accreted land that comprises the disputed beach is owned by the defendants.

Judgment affirmed.

By the Court (Desmond, Hand & Grant, JJ.[10]),

Clerk

Entered:  September 27, 2024.

---

[10] The panelists are listed in order of seniority.

15