### COMMONWEALTH *vs.* SALAH ABOULAZ.

No. 95-P-2079.

Suffolk. February 11, 1997. - January 13, 1998.

Present: WARNER, C.J., JACOBS, & LAURENCE, JJ.

*Assault with Intent to Rape. Practice, Criminal,* Record, Transcript of evidence, Rescript from appellate court.

A Superior Court judge correctly and within his authority allowed a motion to correct the appellate record of a criminal case after the appeal was decided, in circumstances in which issuance of the rescript had been stayed by a timely filed petition for rehearing. [146-148]

INDICTMENT found and returned in the Superior Court Department on June 7, 1993.

The case was tried before *Robert W. Banks,* J., and a motion to correct the record was heard by him.

*Richard J. Fallon* for the defendant.

*Jane A. Sullivan,* Assistant District Attorney, for the Commonwealth.

JACOBS, J. After conviction by a Superior Court jury of assault with intent to rape (G. L. c. 265, § 24), the defendant appealed raising a solitary issue: whether the Commonwealth's proof was sufficient to sustain the conviction.[1] In an unpublished decision entered on April 24, 1997, we concluded that the indictment at issue essentially was tried on a theory of attempted anal rape and that there was no evidence in our record to support a conclu-

---

[1] The defendant also was convicted on two indictments of assault and battery (G. L. c. 265, § 13A) and threats (G. L. c. 275, § 2). He was sentenced to a term of from nine to fifteen years on the indictment for assault with intent to rape with seven years to be served and the balance suspended with a probationary term of five years. The remaining convictions resulted in probationary terms of five years to commence from and after the sentence on the governing indictment. The jury acquitted the defendant upon an indictment for rape and an additional indictment for assault and battery.

sion that there had been such an attempt.[2] Accordingly, we determined that the defendant's trial motion for a required finding of not guilty wrongly had been denied and ordered the verdict to be set aside and the judgment reversed and entered for the defendant.

On May 19, 1997, the Commonwealth filed a motion to stay the issuance of a rescript pursuant to Mass.R.A.P. 23, as amended, 367 Mass. 921 (1975), "pending the Commonwealth's petition for rehearing." In support of that motion, the Commonwealth contended that the transcript of the trial was missing two pages of testimony which contained the victim's description of an attempted anal rape.[3] On May 21, 1997, we stayed the issuance of the rescript until June 23, 1997, and ordered that any petition for rehearing be filed by that date. After allowance of the Commonwealth's timely filed petition for rehearing, the appeal was reheard on July 29, 1997.

In the interim, the trial judge conducted a hearing on the Commonwealth's motion to correct the record. In a written memorandum and order, dated June 19, 1997, he allowed the motion, indicating that he was "aware of no right of the defendant that would be violated by allowing the omitted testimony to be added to the record, so that the Appeals Court may rehear the case with the benefit of the complete lower court testimony."

At the rehearing in this court, appellate counsel argued that his claim of insufficient evidence was so clearly dispositive on the earlier record, that he did not attempt to argue other issues. On that basis, the defendant was granted leave to file a supplementary memorandum on or before September 12, 1997,

---

[2] We noted, but did not rely upon, a confession of error on this issue in the Commonwealth's brief.

[3] The motion was accompanied by an affidavit of the court reporter·assigned to the trial stating that there was "an omission at the beginning of my tape number three as my transcribing machine did not rewind to the beginning position," resulting in the omission of "about two pages of testimony." The omitted pages were attached to the affidavit. With this addition, the stenographer stated the transcript was "now correct and complete." In another affidavit, the victim states that after she learned of the reversal of the defendant's conviction and reviewed the trial transcript, she "realized that there appeared to be a gap." After confirming that belief with a friend who had attended the trial, she contacted the court reporter and asked her to review her trial tapes. The victim further states that the reporter thereafter informed her "that a portion of [her] recorded testimony inadvertently had not been transcribed."

to permit presentation of issues not previously raised, and the Commonwealth was permitted an opportunity to file a response on or before October 14, 1997. By notice received on September 15, 1997, the defendant informed the court "of his choice not to file a supplemental brief." The Commonwealth on the next day noted that the notice "obviates the need for a responsive pleading."[4]

In reviewing the order allowing the Commonwealth's motion to correct the record, we are guided by the principle that "[t]he decision of the trial judge under rule (8)(e) is usually conclusive."[5] *Letch* v. *Daniels*, 401 Mass. 65, 68 n.3 (1987). See *Commonwealth* v. *Nighelli*, 13 Mass. App. Ct. 590, 598 (1982) (treating the trial judge's correction "as essentially conclusive"). See also *Bechtel* v. *Paul Clark, Inc.*, 10 Mass. App. Ct. 685, 693 (1980). Any doubt that the two pages of testimony offered by the Commonwealth with its rule 8(e) motion were missing from the record is dispelled by the extent to which the content of those pages fills the apparent gap in the transcript first considered by the court. See Appendix. Moreover, the missing testimony demystified why the experienced judge, in both his original and supplementary instructions to the jury, explained that the crime alleged by the Commonwealth was "attempted anal intercourse" and "an assault to commit an unnatural penetration of the anal cavity." Compare *Commonwealth* v. *Robles*, 423 Mass. 62, 74 (1996). As we noted in the unpublished decision, "[t]he correctness of either the main jury

---

[4]On August 28, 1997, the defendant filed a motion with this court requesting that he be permitted to view juror questionnaires and certain treatment records of the victim contained in the Superior Court file. On the same day, he filed a motion that the clerk of the Superior Court be ordered to transmit those questionnaires and records to this court. On September 4, 1997, the defendant filed a motion to extend time to file his supplemental brief. The Commonwealth filed a memorandum in opposition to these motions on September 5, 1997. His decision not to file a supplemental brief was received before any hearing or decision on these motions, and rendered them moot.

[5]Massachusetts Rule of Appellate Procedure 8(e), as amended, 378 Mass. 934 (1979), states in relevant part: "If any difference arises as to whether the record truly discloses what occurred in the lower court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident . . . the lower court, either before or after the record is transmitted to the appellate court . . . may direct that the omission . . . be corrected, and if necessary that a supplemental record be certified and transmitted."

charge or the supplementary instructions on the offense of assault with intent to rape was not challenged."

Augmented by the missing testimony, the record amply supports the jury's verdict and the judge's denial of the defendant's motions for a required finding of not guilty. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). Accordingly, the sole issue before us and essentially the only one argued by the defendant at the rehearing was whether, in the circumstances, it was error to correct the record pursuant to rule 8(e). "It is explicitly provided in the Massachusetts Rules of Appellate Procedure that the trial judge shall settle any difference as to whether the record truly discloses what occurred in the lower court. Mass.R.A.P. 8(e) . . . ." *Hamed* v. *Fadili*, 408 Mass. 100, 104 (1990). The defendant argues, as he did to the judge, that the record could not be corrected after we rendered our unpublished decision. He relies on the following language in *Hamed*:

> "That rule [8(e)] has never been applied in this jurisdiction subsequent to an appeal in what amounts to a collateral attack on the appellate decision. It is implicit in the rule and in the very nature of the appellate process that any correction to the record must take place before the appeal has been decided."

*Ibid.*

The Supreme Judicial Court in that case was confronted with a situation which clearly is distinguishable from the present case. There, the court addressed an attempt "to supplement the record on appeal with the trial judge's postappeal revised findings and rulings," *ibid.*, while the case was being considered on further appellate review after a decision of this court. Essentially, the holding in that case is that: "Further appellate review will proceed on the same record on which the Appeals Court based its decision." *Id.* at 105. The dispositive distinction from *Hamed* is that the case before us does not involve "a collateral attack" on an appellate decision. *Id.* at 104. Rather, we are reviewing for error after ascertaining "what occurred in the lower court." Mass.R.A.P. 8(e), *supra.* The critical factor in *Hamed* is not that a rescript had not issued when the record correction was attempted. It is that a rational system of further appellate review best fulfills its function if both appellate courts deal with the same record. Similarly, direct appellate review is best served by procedures assuring the integrity of the trial record.

Massachusetts Rule of Appellate Procedure 23, as amended, 367 Mass. 921 (1975), states in relevant part:

> "The rescript of the court shall issue to the lower court twenty-eight days after the date of the rescript unless the time is shortened or enlarged by order. The timely filing of a petition for rehearing . . . will stay the rescript until disposition of the petition . . . unless otherwise ordered by the appellate court."

Here, acting on the Commonwealth's motion, we stayed the issuance of a rescript until June 23, 1997, and ordered that any petition for rehearing be filed by that date. The timely filing of such a petition further stayed the issuance of a rescript pursuant to rule 23. Neither the distribution of an opinion of this court nor its publication seals the rights of the parties or is binding upon them until the rescript is issued to the trial court. Whether the written opinion of this court is styled, for procedural purposes, as a decision or even a rescript, as it is in rule 23, a binding "decision" does not come into existence as matter of law until the document embodying the order contained within that writing is transmitted to the lower court.

*Judgment affirmed.*

APPENDIX.

### Original Transcript

Q. "Explain to us exactly what he did. Did he touch you with some part of his body?"

A. "He forced his penis into my vagina."

[Alleged gap.]

Q. "What did you do when he did that?"

A. "I was pushing away and I said I would bite it off."

Q. "What did he do in response to your statement?"

A. "He stopped."

### Corrected Transcript

Q. "Explain to us exactly what he did. Did he touch you with some part of his body?"

A. "He forced his penis into my vagina." [End of tape 2B.]
[Corrected transcript follows.]
Q. "How long did that go on for?"
A. "Just a few minutes."
Q. "And after he did that what did he do?"
A. "Then he went into the other room."
Q. "And what did you do?"
A. "I tried to get out of my room. He wouldn't let me out of my room."
Q. "And at some point did he come back into your room?"
A. "Yes."
Q. "What happened when he came back into your room?"
A. "He kept taunting me."
Q. "Did he do something else to you?"
A. "Well I'm not sure at what point you are talking about."
Q. "After he came back into your room. At that time. Did he touch you at some point?"
A. "Yes."
Q. "How was it he touched you?"
A. "He tried to force his penis into my anal cavity."
Q. "What did you do when he tried to do that?"
A. "I was just clinching my muscles really tight and trying to keep my legs tight together so he couldn't get in."
Q. "As the result of that did you have any injuries to your legs?"
A. "I had handprints on the insides of my legs."
Q. "What happened after he tried to do that?"
A. "He started to lose his erection and then he flipped me over and forced his penis into my vagina again."
Q. "How long did that go on for?"
A. "A few minutes."
Q. "Did he ejaculate any of these times?"
A. "No, he didn't."
     MR. YOUNG: "I object to the leading."
     THE COURT: "Overruled. She may ask a question with a yes or no answer."
Q. "Did he touch you in any other way?"
A. "He tried to force me to have oral sex with him."
Q. "Would you tell us how he tried to do that?"
A. "He put his penis into my mouth."
[Resumption of original transcript.]
Q. "What did you do when he did that?"
A. "I was pushing away and I said I would bite it off."
Q. "What did he do in response to your statement?"
A. "He stopped."