# United States Court of Appeals
## For the First Circuit

---

No. 99-2352

IN RE: CARL E. BAYLIS,

~~Debtor,~~

CONSTANCE B. RUTANEN; ELLA QUEVILLON, BY AND FOR THE ESTATE OF ROBERT
S. QUEVILLON; THERESA J. ALEXANDER,

Plaintiffs, Appellees,

v.

CARL E. BAYLIS, INDIVIDUALLY AND IN HIS CAPACITY AS CO-TRUSTEE OF THE
ANTONIA QUEVILLON TRUST,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

---

Before

Torruella, Chief Judge,
Stahl and Lipez, Circuit Judges.

---

David M. Nickless, with whom Nickless & Phillips was on brief for
appellant.
Christopher S. Wheeler, with whom Robert A. Gelinas and Bulkley,
Richardson & Gelinas, LLP, were on brief for appellees.

**STAHL,** <u>Circuit Judge</u>.  Defendant-appellant Carl Baylis appeals the district court's decision that a seven-year-old state probate court finding should be given preclusive effect in the subsequent adversarial bankruptcy court proceeding.  We vacate and remand.

## I.

In October 1969, Baylis, an attorney specializing in taxation and estate planning, created a trust (the "Trust") for Antonia Quevillon.  Baylis included in the agreement an exculpatory clause which provided that the Trustees would be "liable only for [their] own willful conduct or omissions in bad faith."  The res of the Trust consisted of two apartment buildings in Worcester, Massachusetts, and six in Southbridge, Massachusetts.  The Trust provided that Quevillon would serve as trustee and that upon her death, Estelle Ballard and Baylis would serve as co-trustees.  Ballard was one of Quevillon's daughters and was, along with her siblings--plaintiffs-appellees Constance Rutanen, Robert Quevillon,[1] and Theresa Alexander (the "plaintiffs")--an income beneficiary of the Trust.  Ballard had agreed

---

[1]The estate of Robert Quevillon is represented in this action by Ella Quevillon.

-2-

with her mother to be paid fifty dollars per week for the management of the properties. Baylis was paid only for specific work he performed for the Trust.

During the life of the Trust, net income was to be distributed equally among the beneficiaries. Twenty years after Antonia Quevillon's death, the Trust was to terminate, and the Trust property was to be divided equally among the children of her son Marcel. The Trust terminated on May 20, 1991, and the Trust property was distributed to Marcel Quevillon's children.

Upon Antonia Quevillon's death in 1971, Ballard and Baylis sold one of the properties to pay estate taxes. Over the next fifteen years, the Trust paid the beneficiaries modest amounts. In 1985, the plaintiffs, concerned because of the minute amounts they were receiving from the Trust, met with Ballard and Baylis to discuss its operation. By then, both Worcester buildings had been sold, but the Trust still held the six Southbridge buildings. At this meeting, it was agreed, with no objection from Ballard, that the co-trustees would sell the remaining properties and invest the proceeds in treasury notes.

By January 1986, Ballard and Baylis had received offers for the properties. A Mr. and Mrs. John Young made an offer for two of the properties, and Ramshorn Realty Trust ("Ramshorn") offered to buy the other four. The total price offered for the six buildings totaled $1,640,000, which was $300,000 greater than the properties' appraised

values.  Ballard then decided not to sell any of the properties, claiming that she wanted to keep them for herself.  Because Baylis believed that the real estate market had peaked, he urged the sale of the properties, but Ballard remained steadfast in her refusal to sell. In February 1986, in an attempt to complete the transactions before an increase in the federal capital gains tax became effective, Baylis first offered Ballard a chance to buy all the property, which she was unable to do because she lacked financing, and then offered her an additional management fee of either $75,000 or $133,667 if she would assent to the sale.  She refused.  Nevertheless, despite her refusal, Baylis presented unsigned purchase and sale agreements to the Youngs in May 1986 and to Ramshorn in June 1986.  Both parties executed and returned the agreements to Baylis.

After he received the signed purchase and sale agreements, Baylis attempted to garner Ballard's signature on them.  She refused, prompting Baylis to propose to her that the Trust would sell the two properties earmarked for the Youngs to her instead.  In return, she was to assent to the sale of the other four properties to Ramshorn, resign as co-trustee, and agree to a trustee fee for Baylis.  Ballard agreed.

In December 1986, when the Youngs became aware of this arrangement, they sued Baylis for fraud and Ballard and Baylis, in their capacities as co-trustees, for specific performance.  Ballard

-4-

then withdrew her agreement with Baylis and refused to sell the four properties to Ramshorn. The properties, therefore, remained unsold. Ballard and Baylis used Trust funds to finance their defense of the Young litigation. Jointly, they spent approximately $12,000 in defending themselves as co-trustees, with Baylis spending approximately $7000 to defend himself against the fraud claim. Finally, to settle its litigation the Trust paid $15,000 to the Youngs in connection with their fraud claim against Baylis.

That same December, Baylis filed with the probate court a petition for a license to sell the properties on behalf of the Trust. The probate court decided to defer acting on the petition until Ballard gave her consent to sell. She never did. Baylis thereafter failed to pursue the petition even though he believed that Ballard's reason for refusing to sell was baseless and that her refusal constituted a breach of fiduciary duty. Consequently, the property was not sold. Within a short time, property values in the area fell, and the value of the Trust was diminished.

In May 1988, the plaintiffs sued Ballard and Baylis in Massachusetts Probate Court. The plaintiffs sought an accounting and alleged breach of fiduciary duty, conversion, fraud, and negligent misrepresentation. After a bench trial, the court found that Baylis had acted negligently in failing to prevent Ballard from fulfilling her fiduciary duties. In addition, it found that the exculpatory clause in

the Trust Agreement was unenforceable and that, in failing to sell the properties, Ballard and Baylis had acted in bad faith. The trial court entered judgment for $330,079.95 against Ballard and Baylis.

The Massachusetts Appeals Court affirmed the judgment of the probate court with respect to both its negligence and bad faith determinations. The Supreme Judicial Court of Massachusetts ("SJC") granted Ballard and Baylis's application for further appellate review and affirmed. In so doing, however, the court expressly refused to reach the issue of bad faith, stating that a finding of negligent breach of fiduciary duty would suffice to affirm the judgment. Baylis subsequently filed a petition for rehearing in which he requested, inter alia, that the SJC reverse the trial court's finding of bad faith. The SJC denied the petition.

Following the SJC's affirmance, Baylis filed for bankruptcy. The plaintiffs opposed the discharge of his judgment debt to them and brought an adversary action pursuant to 11 U.S.C. § 523(a). This section of the Bankruptcy Code prohibits the discharge of any debt arising from "defalcation while acting in a fiduciary capacity," id. § 523(a)(4), or from "willful and malicious injury," id. § 523(a)(6). The parties filed cross-motions for summary judgment,[2] agreeing to be bound by the probate court's factual findings, except for the finding

---

[2]Although they styled their motions as ones for "summary judgment," it is evident that they expected the bankruptcy court simply to resolve the case on a stipulated record.

that Baylis acted in bad faith.  The plaintiffs argued that the bankruptcy court should accord this finding preclusive effect, but the court disagreed.  The court went on to find neither willful and malicious injury nor defalcation.  Therefore, the court held that Baylis's debt to the plaintiffs was dischargeable and entered judgment to Baylis in the adversary action.

The plaintiffs appealed to the district court, arguing that the bankruptcy court had erred in its determination that issue preclusion did not apply to the probate court's determination of bad faith.  In a Memorandum and Order dated October 29, 1999, the district court reversed the holding of the bankruptcy court, holding that issue preclusion did apply.  It further held that the finding of bad faith under Massachusetts law required concomitant findings of defalcation and willful and malicious injury under the Bankruptcy Code. Consequently, it reversed and ordered that judgment be entered in favor of the plaintiffs.  This appeal followed.

## II.

The sole issue before us is whether the district court was correct in ruling that the bankruptcy court should have given preclusive effect to the probate court's finding that Baylis had acted in bad faith. We review this ruling de novo. See IRS v. Cousins (In re Cousins), 209 F.3d 38, 40 (1st Cir. 2000); Prebor v. Collins (In re I Don't Trust), 143 F.3d 1, 3 (1st Cir. 1998).

-7-

The plaintiffs argue that the issue of bad faith was fully and fairly litigated in the state probate court and, as such, should have preclusive effect in the bankruptcy proceeding. In doing so, they point out that the probate court found Baylis to have acted in bad faith and that the appeals court affirmed this finding. Further, they argue that this finding of bad faith suffices to prove that Baylis committed defalcation and inflicted willful and malicious injuries on the plaintiffs. Baylis responds that because the probate court alternatively found that Baylis was negligent and had acted in bad faith and because the SJC affirmed only on the negligence ground, there was no preclusive final judgment on the issue of bad faith. Thus, we must decide whether issue preclusion applies when a trial court's judgment, which rests on alternative grounds, is affirmed by the intermediate appeals court on both grounds, but by the court of last resort on only one ground.

It is well-settled that a previously litigated issue between two parties should not be relitigated. See Montana v. United States, 440 U.S. 147, 153 (1979); Miles v. Aetna Cas. & Sur. Co., 589 N.E.2d 314, 316-17 (Mass. 1992). The principles of issue preclusion apply to nondischargeability proceedings in bankruptcy. See Grogan v. Garner, 498 U.S. 279, 285 n.11 (1991). By federal statute, judicial proceedings in state court "shall have the same full faith and credit in every court within the United States . . . as they have by law or

usage in the courts of such State." 28 U.S.C. § 1738. Therefore, in a case such as this, we employ Massachusetts issue preclusion law. See Kyricopoulos v. Town of Orleans, 967 F.2d 14, 16 (1st Cir. 1992) (per curiam). And, as we previously have noted, Massachusetts courts follow the traditional rules for the doctrine of issue preclusion. See Willhauck v. Halpin, 953 F.2d 689, 705 (1st Cir. 1991) (citing Martin v. Ring, 514 N.E.2d 663, 664 (Mass. 1987)).

For an issue to receive preclusive effect in a later proceeding under Massachusetts law, the following four elements must be present: (1) the issue sought to be precluded must be identical to that in the prior litigation; (2) the parties actually must have litigated the issue; (3) the judgment regarding the issue must have been binding and valid; and (4) the issue's determination must have been essential to the judgment. See Martin, 514 N.E.2d at 664; see also Keystone Shipping Co. v. New England Power Co., 109 F.3d 46, 51 (1st Cir. 1997) (noting that these four elements are required both by Massachusetts courts and by the First Circuit).

"If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone," and neither receives preclusive effect. 1 Restatement (Second) of Judgments § 27 cmt. i [hereinafter Restatement]; see also York Ford, Inc. v. Building

Inspector & Zoning Adm'r, 647 N.E.2d 85, 87-88 (Mass. App. Ct. 1995) (adopting the rule of comment i to section 27). If, however, "the appellate court" affirms both grounds of the holding, each ground receives preclusive effect. 1 Restatement § 27 cmt. o; see also York Ford, Inc., 647 N.E.2d at 88 n.7 (adopting the rule of comment o to section 27). On the other hand, if "the appellate court" affirms on one ground and passes on the other, "the judgment is conclusive [only] as to the first determination." 1 Restatement § 27 cmt. o.

In this case, each determination of the court of first instance was affirmed by the appeals court, but the SJC affirmed one determination and explicitly passed on the other. This result appears to generate a novel complication, but because of the role the SJC plays when reviewing cases in this posture, the general tenets of comment o apply. Strictly speaking, when the SJC reviews cases that originate in probate court, its concern is not with the decision of the Massachusetts Appeals Court; rather, the SJC reviews the disposition of the probate court as if the appeal came directly to it. See, e.g., In re Adoption of Hugo, 700 N.E.2d 516, 520-21 (Mass. 1998) (noting that the SJC reviews the findings of the probate court for clear errors of law), cert. denied, 526 U.S. 1034 (1999); White v. White, 76 N.E.2d 15, 16-17 (Mass. 1947) ("All questions of law, fact and discretion are open for our decision, and we can find facts contrary to the [probate] judge's findings if convinced that he is plainly wrong."). In this

-10-

sense, when the SJC hears a case that originated in the probate court, its ruling supercedes that of the Massachusetts Appeals Court for the purposes of issue preclusion and assumes the role of "the appellate court" to which comment o refers.[3] The SJC's determination that the bad faith finding was unnecessary to decide the case thus vitiates any argument that the finding should receive preclusive effect.

The SJC's skeptical view of the evidence of bad faith, which it found to be "questionable," Rutanen v. Ballard, 678 N.E.2d 133, 140 (Mass. 1997), adds additional support to our conclusion. Alternative holdings from a court of first instance receive no preclusive effect until affirmed by the appellate court in part because the court of first instance may not have considered each determination "as carefully or rigorously" as it would have if each had been essential to the result. 1 Restatement § 27 cmt. i. Once the losing party has obtained an appellate decision on the issue, however, "the balance weighs in favor of preclusion" because the appellate court has reviewed and upheld the determinations of the court of first instance. 1 id.

---

[3]Moreover, an opinion of the Massachusetts Appeals Court is not a "decision" binding on the parties until its rescript issues to the lower court. See Commonwealth v. Aboulaz, 688 N.E.2d 1374, 1377 (Mass. App. Ct.), review denied, 692 N.E.2d 963 (Mass. 1998). But in this case, the rescript of the appeals court never issued to the probate court because "[i]f an application of further appellate review is granted the rescript of the Appeals Court shall not issue to the lower court." Mass. R. App. P. 23. Because the appeals court's opinion never became a binding decision, the SJC is the relevant appellate court for issue preclusion purposes.

-11-

cmt. o.  In other words, the alternative determination cannot have preclusive effect until the appellate court analyzes it and decides that the court of first instance correctly resolved it.  Here, the relevant appellate court not only failed to endorse the correctness of the finding, but it explicitly questioned it.[4]  Under these circumstances, issue preclusion should not apply.

### III.

For the foregoing reasons, the decision of the district court is **vacated**, and the case is **remanded** for further action consistent with this opinion.  **No costs.**

---

[4]Furthermore, comments i and o to section 27 are not meant as exceptions to the general rule of issue preclusion stated in that section.  Instead, they elucidate one of the basic elements of that rule, that the determination must have been "essential to the judgment."  In this case, however, the SJC explicitly said that the finding of Baylis's bad faith was not essential to the judgment.  The failure to meet that element means that the finding is not entitled to preclusive effect.