Wilkins, Douglas H., J.
The defendants, Dell, Inc. and certain affiliates (collectively, “Dell”), argue that this Court must disregard the Supreme Judicial Court’s rescript invalidating Dell’s arbitration agreement in this very case, Feeney v. Dell, Inc., 454 Mass. 192 (2009), because of the United States Supreme Court’s decision in AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740 (2011). In the plaintiffs’ view, that would amount to disobedience.
These arguments arise in a putative consumer class action brought by the late John A. Feeney[3] and Ded-ham Health and Athletic Club challenging Dell’s allegedly unfair and deceptive collection of sales tax on computer service contracts. In the wake of Concepcion, Dell has filed its Renewed Motion to Confirm Arbitration Award of Dismissal With Prejudice (“Motion”). The Motion presents difficult issues under the law of the case doctrine, retroactivity rules and, ultimately, preemption principles under the Federal Arbitration Act, 9 U.S.C. §2 (“FAA”). I conclude that this Court has the power and duty to depart from the rescript in this case if the two decisions cannot be reconciled, but that Feeney survives Concepcion under applicable preemption law. After hearing and review of the written submissions, the Motion is DENIED.
BACKGROUND
The plaintiffs sued Dell in 2003 under G.L.c. 93A, on behalf of a putative class of Dell customers. Dell successfully moved for an order compelling arbitration. Feeney v. Dell, Inc., 2004 WL5665091 (Middlesex Super. 2004) (Bohn, J.). The arbitrator rejected class *653 arbitration and dismissed the individual plaintiffs’ claims with prejudice. The plaintiffs moved to vacate the decision. This Court denied the motion and confirmed the arbitration award. Feeney v. Dell, Inc., 23 Mass. L. Rptr. 651 (Middlesex Super. 2008) (Fremont-Smith, J.). On appeal in 2009, the Supreme Judicial Court reversed, holding that the agreement barring class actions was unenforceable and remanded the case for further proceedings, including the filing of a third amended complaint. See Feeney, 454 Mass. at 205-14. Relying upon the Supreme Judicial Court’s opinion, this Court denied the defendants’ motion to dismiss the third amended complaint. Feeney v. Dell Computer Corp., 26 Mass. L. Rptr. 297 (Middlesex Super. 2009) (Fremont-Smith, J.).
The Dell Arbitration Clause
The Motion seeks enforcement of the paragraph entitled “Binding Arbitration” in the plaintiffs’ contracts with Dell (“Dell Arbitration Clause”).[4] The Supreme Judicial Court interpreted the Dell Arbitration Clause as follows:
The “Dell Terms and Conditions of Sale” [footnote omitted] in effect at the time of the plaintiffs’ purchases contain an arbitration clause compelling arbitration of any claim against Dell (but not binding Dell in connection with any claims it may have against a customer) and mandating that any such claims be arbitrated on an individual basis. [Footnote omitted.] Specifically, the terms provide that claims against Dell “arising from or relating to this Agreement” shall be resolved “exclusively and finally” by arbitration, and that the arbitration “will be limited solely to the dispute or controversy between Customer and Dell.” [Footnote omitted.] The effect of these provisions is to prohibit a Dell customer from participating in a class action—whether by litigation or arbitration—against Dell. [Footnote omitted.]
Feeney, 454 Mass. at 194-95.
The Supreme Judicial Court’s Decision
After reviewing the facts, the Supreme Judicial Court agreed with the plaintiffs that the Dell’s class action prohibition “contravenes Massachusetts public policy.” Id. at 199, quoting plaintiffs’ brief. It concluded that, “expressions of three branches of Massachusetts government indicate that the public policy of the Commonwealth strongly favors G.L.c. 93A class actions.” Id. at 200.
Recognizing that “causes for which advocates cannot be obtained are, in effect, not adjudicable” [citations omitted], the 1969 amendments to G.L.c. 93A included provisions for a minimum recovery, attorney’s fees, treble damages in certain cases, and most relevant to this case, class actions . . . Permitting consumers to sue as a class cured the defect inherent in the consumer protection statute that no matter how egregiously a consumer might have been wronged, “the economics of a litigation designed to seek redress precluded an effective attack.” [Citation omitted.]
Id. at 201-02. It also noted that prohibition of a class action “undermines the public interest in deterring wrongdoing” and “negatively affects the rights of those unnamed class members on whose behalf the class action would proceed.” Id. at 203.
These broad pronouncements aside, Feeney turned on the specific facts of this case. “The right to a class action in a consumer protection case is of particular importance where, as here, aggregation of small claims is likely the only realistic option for pursuing a claim.” Id. at 202. It held that “Dell’s class action prohibition undermines this policy and, in so doing, defeats ‘the presumption’ that arbitration provides ‘a fair and adequate mechanism for enforcing statutory rights.’ ” Id. at 202 (citation omitted).
The Court rejected Dell’s claim that the plaintiffs had not shown that a class action was necessary to obtain relief for their statutory rights. Among other authority, it cited the very case that the United States Supreme Court overruled in Concepcion—Discover Bank v. Superior Court, 36 Cal.4th 148, 162, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005). It stated that, even though Dell had not attempted to displace a statutory scheme:
The claimed damages here are small (Feeney claims damages of $13.65, and Dedham Health claims damages of $215.55), and we need not engage “in an exhaustive analysis" to determine that the costs of bringing such claims are “prohibitive.” [Citation and footnote omitted.] It is sufficient that the plaintiffs’ claims are of a class of disputes that “predictably involve small amounts of damages.” Discover Bank v. Superior Court, 36 Cal.4th 148, 162, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005). The defendants’ argument that the statutory availability of attorney’s fees, damages, and multiple damages to a prevailing plaintiff under G.L.c. 93A would “enable the plaintiffs to vindicate valid claims without a class action” is unpersuasive; these statutory provisions are not sufficient to ensure that a consumer or business with a small-value claim will be able to find an attorney willing to take the case absent the ability to aggregate claims. See Gentry v. Superior Court, 42 Cal.4th 443, 464, 64 Cal.Rptr.3d 773, 165 P.3d 556 (2007), quoting Discover Bank v. Superior Court, supra at 162, 30 Cal.Rptr.3d 76, 113 P.3d 1100 .. . This is the import of the Legislature’s 1969 amendment of G.L.c. 93A to provide for class actions in addition to statutory damages and attorneys fees.
Feeney, 454 Mass. at 204. In footnote 29, the Court stated that it was “not dispositive whether, as the defendants claim, the plaintiffs did not present the motion judge in the Superior Court with proof that their claims were not individually viable.” Id. at 204 *654 n.29. The Supreme Judicial Court summarized its reasoning:
We decline to enforce a prohibition on class actions in a consumer contract where to do so would in effect sanction a waiver of the right to proceed in a class action under G.L.c. 93A. Allowing companies that do business in Massachusetts, with its strong commitment to consumer protection legislation, to insulate themselves from small value consumer claims creates the potential for countless customers to be without an effective method to vindicate their statutory rights, a result clearly at odds with our public policy.
Id. at 205. It then held that “in the circumstances of a case such as this (small value claims sought under our consumer protection statute, G.L.c. 93A), a clause effectively prohibiting class proceedings in any forum violates the public policy of the Commonwealth.” Id. at 206.[5]

Concepcion

The arbitration agreement before the Supreme Court in Concepcion was “ ‘quick, easy to use’ and likely to ‘promp[t] full or . . . even excess payment to the customer without the need to arbitrate or litigate.’ ” Concepcion, 131 S.Ct. at 1745, quoting the District Court’s opinion. The Court described that agreement to arbitrate (“AT&T Arbitration Clause”) as follows:
The revised agreement provides that customers may initiate dispute proceedings by completing a one-page Notice of Dispute form available on AT&Ts Web site. AT&T may then offer to settle the claim; if it does not, or if the dispute is not resolved within 30 days, the customer may invoke arbitration by filing a separate Demand for Arbitration, also available on AT&Ts Web site. In the event the parties proceed to arbitration, the agreement specifies that AT&T must pay all costs for non-frivolous claims; that arbitration must take place in the county in which the customer is billed; that, for claims of $10,000 or less, the customer may choose whether the arbitration proceeds in person, by telephone, or based only on submissions; that either party may bring a claim in small claims court in lieu of arbitration; and that the arbitrator may award any form of individual relief, including injunctions and presumably punitive damages. The agreement, moreover, denied AT&T any ability to seek reimbursement of its attorney’s fees, and, in the event that a customer receives an arbitration award greater than AT&Ts last written settlement offer, requires AT&T to pay a $7,500 minimum recovery [increased to $10,000 in 2009] and twice the amount of the claimant’s attorneys fees.
Id. at 1744. As the Supreme Court noted twice, the District Court found that “consumers who were members of a class would likely be worse off’ than consumers who invoked AT&Ts arbitration clause. Id. at 1745, 1753. Despite these findings, “relying on the California Supreme Court’s decision in [Discover Bank], the [district] court found that the arbitration provision was unconscionable because AT&T had not shown that bilateral arbitration adequately substituted for the deterrent effects of class actions.” Id. at 1745. The Ninth Circuit affirmed. Laster v. AT&T Mobility LLC, 584 F.3d 849, rev’d sub nom Concepcion, supra.
On appeal, the Concepcions relied on the FAA’s exception to preemption for state rules that “exist at law or in equity for the revocation of any contract.” FAA §2. The Court responded that “nothing in [§2] suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA’s objectives” and proceeded to analyze the case under what amounts to standard conflict preemption principles. Concepcion, 131 S.Ct. at 1748, citing Geier v. American Honda Motor Co., 529 U.S. 861, 872 (2000); Crosby v. National Foreign Trade Council, 530 U.S. 363, 372-73 (2000). See also Concepcion, 131 S.Ct. at 1753, citing Hines v. Davidowitz, 312 U.S. 52 (1941).
The Court observed that “[t]he ‘principal purpose’ of the FAA is to ‘ensur[e] that private arbitration agreements are enforced according to their terms.’ ” Concepcion, 131 S.Ct. at 1748 (citations omitted). It recognized that “the FAA was designed to promote arbitration” and that its decisions “have repeatedly described the Act as ‘embod lying] [a] national policy favoring arbitration.” Id. 131 S.Ct. at 1749 (citation omitted). After citing decisions invalidating measures that conflicted with that policy, the Court stated:
The California’s Discover Bank rule similarly interferes with arbitration. Although the rule does not require classwide arbitration, it allows any party to a consumer contract to demand it ex post. The rule is limited to adhesion contracts . . . but the times in which consumer contracts were anything other than adhesive are long past, [footnote and citations omitted]... The rule also requires that damages be predictably small, and that the consumer allege a scheme to cheat consumers ... The former requirement, however, is toothless and malleable (the Ninth Circuit has held that damages of $4,000 are sufficiently small [citation omitted]), and the latter has no limiting effect, as all that is required is an allegation.
Id. at 1750. It found three respects in which a non-consensual class arbitration requirement, imposed by Discover Bank, would conflict with the FAA. Id. at 1751-52. First, class arbitration sacrifices the informality of arbitration and makes for a slower and more costly process, “more likely to generate procedural morass than final judgment.” Id. at 1751. Second, class arbitration requires procedural formality, particularly for the protection of absent parties. Id. at 1751-52. Third, class arbitration increases risks to defendants, including the risk of error (for which no *655 appellate remedy would exist), multiplied by the higher stakes from aggregated claims. Id. at 1752.
The majority rejected the dissent’s argument “that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system.” Id. at 1753. It explained that, “States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons.” Id. It then demonstrated at some length that “the claim here was most unlikely to go unresolved” because of the provisions, cited above, that the lower courts found provided sufficient incentive to arbitrate. Id.
DISCUSSION
Law of the Case and the Rescript.
Feeney's rescript is a direct order about this court’s future conduct of this veiy case. See Reporter’s Notes (1973) to Mass.R.App.P. 23 (“A rescript is the equivalent at the appellate level, of judgment in the trial court ... It is the appellate court’s enunciation of its disposition of the appeal, the order directing the lower court’s further conduct of the case”) (emphasis added); cf. Commonwealth v. Aboulaz, 44 Mass.App.Ct. 144, 148 (the rescript transmitted to the lower court is an “order”), rev. denied, 427 Mass. 1102 (1998). The parties debate whether the Superior Court has the power to depart from that explicit appellate mandate. If the answer is “yes,” they also disagree about the weight this Court must give to the Supreme Judicial Court’s rescript in determining whether the United States Supreme Court has overruled Feeney.
Dell invokes the “law of the case” principles. “The ‘law of the case’ doctrine reflects [the courts’] reluctance ‘to reconsider questions decided upon an earlier appeal in the same case.’ ” King v. Driscoll, 424 Mass. 1, 7-8 (1996), quoting Peterson v. Hopson, 306 Mass. 597, 599 (1940). However, “[a]n issue ‘once decided’ ” may be reopened if.". . the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." Id. at 8, quoting United States v. Rivera-Martinez, 931 F.2d 148, 151 (1st Cir.), cert. denied, 502 U.S. 862 (1991), quoting White v. Murtha, 377 F.2d 428, 432 (5th Cir. 1967). Dell cites numerous federal cases in which a trial court has properly departed from an appellate decision in the same case because of intervening and controlling authority to the contrary. E.g., CPC Int’l, Inc. v. Northbrook Excess & Surplus Ins. Co., 46 F.3d 1221, 1215-17 (1st Cir. 1995).
The plaintiffs counter that King speaks only to the Supreme Judicial Court’s ability to reconsider its own decisions, not the Trial Court’s ability to revisit a rescript. Yet, this Court must follow not only the Supreme Judicial Court’s rulings, but also controlling federal authority on questions of federal law. A Massachusetts trial court is not bound by a Supreme Judicial Court decision that “is overruled as wrong in law.” Bucholz v. Green Bros. Co., 290 Mass. 350, 355 (1933). See also Lunn & Sweet Co. v. Wolfman, 268 Mass. 345, 349 (1929).
The plaintiffs also point out that Feeney is not just any appellate decision; it resulted in a rescript to this Court ordering proceedings on remand in this veiy case. In this case, the rescript clearly stated that the “arbitration clause is unenforceable.”[6] Usually, the appellate court’s “remand instructions [become] the governing ‘law of the case’ and should not [be] reconsidered by the remand judge.” City Coal Co. of Springfield, Inc. v. Noonan, 434 Mass. 709, 712 (2001); Cf. Aboulaz, 44 Mass.App.Ct. at 148 (“order” contained within the rescript); Commonwealth v. Dube, 59 Mass.App.Ct. 476, 485-86 (2003) (lower courts “have no power to alter, overrule or decline to follow the holding” of cases decided by the Supreme Judicial Court).
These decisions, however, do not address the circumstances before this Court. In City Coal, 434 Mass. at 711-12, the Trial Court cited authority that predated the rescript. The parties here have cited no Massachusetts case that precludes the trial court from applying new, “controlling authority” within the meaning of King, 424 Mass. at 8, on the ground that a rescript prohibits it from doing so. The reference to “law of the case” in City Coal, 434 Mass. at 712, suggests that traditional law of the case principles apply notwithstanding transmission of the Supreme Judicial Court’s rescript to this Court.
The federal courts treat the existence of an appellate mandate as a special application of the law of the case doctrine:
. . . the so-called “mandate rule,” generally requiring conformity with the commands of a superior court on remand, is simply a specific application of the law of the case doctrine and, as such, is a discretion-guiding rule subject to an occasional exception in the interests of justice.
* * *
At a minimum, reopening would require a showing of exceptional circumstances—a threshold which, in turn, demands that the proponent accomplish one of three things: show that controlling legal authority has changed dramatically; proffer significant new evidence, not earlier obtainable in the exercise of due diligence; or convince the court that a blatant error in the prior decision will, if uncorrected, result in a serious injustice.
United States v. Bell 988 F.2d. 247, 251 (1st Cir. 1993). I find this test persuasive, as its somewhat stricter reading of exceptions to the law of the case doctrine captures the caution that a trial court must exercise before departing from a rescript in the very same case, based upon the same facts presented on remand. It follows that this Court must view the Motion through a veiy narrow lens, applying the spe *656 cific holding in Concepcion and the necessary implications of the Supreme Court’s reasoning, but not the wide array of possible inferences that find some support in Concepcion but are debatable. Cf. Chen-Oster v. Goldman, Sachs & Co., 2011 WL 2671813 at *5 (S.D.N.Y.2011) (applying law of the circuit because no change is “clearly mandated” by Concepcion, which is therefore not a “controlling decision”).
Retroactivity and Finality
Dell did not petition for a writ of certiorari from the Supreme Judicial Court’s decision in this case. The plaintiffs argue that Feeney finally disposed of Dell’s arbitration argument on the merits and, therefore, Concepcion does not apply retroactively to Dell’s arbitration defense. Dell argues that Concepcion applies because this case remains open until this Court enters another final judgment under Mass.R.Civ.P. 54.[7]
Ordinarily, a new rule applies to “all litigants with live claims, i.e. those litigants with cases still open on direct review.” Wynn & Wynn, P.C. v. Massachusetts Commission Against Discrimination, 431 Mass. 655, 662-63 (2000) (new constitutional rule); MacCormack v. Boston Edison Co., 423 Mass. 652, 657 (1996) (“. . . the Supreme Court has held that, when a rule of Federal law is applied retroactively in the case in which it is announced, it should apply retroactively to all parties similarly situated to eradicate ‘selective temporal barriers to the application of federal law’ in civil cases”) (citation omitted).
Applying this rule here is not so simple. Feeney's invalidation of the Dell Arbitration Clause, though interlocutory, was final for purposes of appeal and issue preclusion generally. Southland Corp. v. Keating, 465 U.S. 1, 7-8 (1984) (finality of state supreme court’s order denying requested order for arbitration); Jarosz v. Palmer, 436 Mass. 526, 533-34 (2002) (final judgment is not necessary for issue preclusion where the order “was appealed or could have been appealed”), quoting Tausevich v. Board of Appeals of Stoughton, 402 Mass. 146, 149 (1988).[8] At the same time, the Supreme Judicial Court’s rescript remanded the case for further proceedings in this Court, leaving the case, if not the arbitration issue, live until entry of a judgment under Mass.R.Civ.P. 54. The parties cite no case directly on point.
As noted above, the very nature of a rescript permits application of the law of the case doctrine, including its exceptions. If an exception does apply, the rescript is not the final word. For that reason, whatever finality the interlocutoiy appellate decision may have for other purposes, it was not final for purposes of protecting the plaintiffs from the application of Concepcion at this time. There is no procedural bar to reaching the merits of the Motion.[9]
Reconciling Feeney and Concepcion
Stated precisely, Concepcion, 131 S.Ct. at 1753, held that “California’s Discover Bank rule is preempted by the FAA,” because it “stands as an obstacle” to accomplishing and executing Congress’s full purposes and objectives.[10] The Court defined the “Discover Bank rule” as “California’s rule classifying most collective-arbitration waivers in consumer contracts as unconscionable." Id. at 1746. The opinion shed further light on the breadth of the rule, as reflected in the word “most.” It focused upon a passage in Discover Bank, 36 Cal.4th at 162, 30 Cal.Rptr.3d 76, 113 P.3d at 1110, which declared unconscionable class-action waivers (1) “in a consumer contract of adhesion” (2) where disputes “predictably involve small amounts of damages” and (3) the party with the superior bargaining power allegedly “has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money ...”
Portions of this test are not self-defining and reveal their meaning only through application in individual cases. The Supreme Court noted that, in practice, criterion (2) has treated as “predictably small” amounts as high as $4,000, making that apparent limitation “toothless and malleable.” Concepcion, 131 S.Ct. at 1750. More fundamentally, the case and controversy before the Court involved a consumer-friendly arbitration clause that made it “most unlikely” that the claim at issue would “go unresolved.” Id. at 1753. As understood by the Supreme Court, the Discover Bank rule deemed arbitration clauses unconscionable even if—like the AT&T provision at issue—they made individual arbitration an attractive (or even the most attractive) option. Id.
The Discover Bank rule indisputably has features not present in Feeney. That does not necessarily end the inquiry if the Supreme Court’s reasoning clearly mandates preemption. See above, p. 11. In that regard, Concepcion interprets the savings clause of §2 by applying basic conflict preemption principles.
It is well established that Federal law preempts State law when an actual conflict exists between them. See Attorney Gen. v. Brown, 400 Mass. 826, 829 (1987). See also Fidelity Fed. Sav. & Loan Assn, v. de la Cuesta 458 U.S. 141, 153 (1982); Geier v. American Honda Motor Co., supra at 869. As pertinent here, “[a] conflict may be found where compliance with both State and Federal regulations is physically impossible, see Florida Lime & Avocado Growers, Inc. v. Paul 373 U.S. 132, 142-43 (1963), or where the State statute ‘stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,’ Hines v. Davidowitz, 312 U.S. 52, 67 (1941).” Attorney Gen. v. Brown, supra at 829.
Heinricher v. Volvo Car Corp., 61 Mass.App.Ct. 313, 316 (2004).
“Preemption ... is not favored, and State laws should be upheld unless a conflict with Federal law is clear.” Attorney Gen. v. Travelers Ins. Co., 385 Mass. 598, 602 (1982), vacated, 463 U.S. 1221 (1983), *657 reaff'd, 391 Mass. 730 (1984), aff'd sub nom Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724 (1985). “To support a claim of preemption, the defendants are ‘required to prove their case with hard evidence of conflict, and not merely with unsupported pronouncements as to [Federal] ’’policy." ’ “ Roberts v. Southwestern Bell Mobile Systems, Inc., 429 Mass. 478, 491 (1999), quoting Grocery Mfrs. of Am., Inc. v. Department of Pub. Health, 379 Mass. 70, 81-82 (1979), quoting Kargman v. Sullivan, 552 F.2d 2, 6 (1st Cir. 1977); see also Commonwealth Elec. Co. v. Department of Pub. Utils., 397 Mass. 361, 376 (1986) (“The burden is on the party seeking to displace the State action to show preemption with hard evidence of conflict based on the record”), cert. denied, 481 U.S. 1036 (1987).
Dell has not met its burden here. Its arbitration agreement stands in stark contrast to the AT&T agreement in Concepcion, 131 S.Ct. at 1753, which had so many pro-consumer incentives that an individual consumer might be better off in arbitration than in class litigation. The Dell Arbitration Clause provides no incentives and simply requires arbitration of all disputes, even those that could not possibly justify the expense in light of the amount in controversy. Dell itself acknowledged that, “it is doubtful that the plaintiffs will pursue the suit if the denial of class action status is sustained on appeal.” Ellis AIL, Ex. 6 at p. RA-01891. Here, based upon facts—not unsupported hypothesis—there is no realistic individual claim arbitration process that the FAA could promote. The Dell Arbitration Clause serves only as an effective prohibition upon class actions involving individual claims in the tens or hundreds of dollars.[11] The facts here differ markedly from those in Concepcion.
The differences matter. Where arbitration is infeasible as a matter of fact, a serious question exists whether there is any federal interest with which state law might conflict. In particular, this case does not present the three points of conflict identified in Concepcion, 131 S.Ct. at 1751-52. The federal interest in the “informality” of arbitration presupposes a meaningful arbitration process in the first place (as in the AT&T agreement before the Supreme Court). Otherwise, there is no informal process to protect. The concern over the loss of “procedural” informality likewise vanishes where individual arbitration is not a viable option. A court-based class action displaces no arbitration at all, let alone one with simple procedural rules.[12] Finally, without any real prospect of arbitration, defendants run no risk of uncorrectable arbitrator’s errors that might be multiplied by aggregating claims. The defendants have produced no “hard evidence” that invalidation of a Dell-type arbitration clause[13] on unconscionability grounds conflicts with the FAA.
Beneath the factual differences between the Discover Bank rule and Feeney lie doctrinal distinctions. The Supreme Judicial Court looked at the dollar amounts of the plaintiffs’ specific claims here ($13.65 and $215.55) before determining that “the costs of bringing such claims are ‘prohibitive.’ ” Feeney, 454 Mass. at 204. Not only are these claims smaller by more than one order of magnitude than the $4000 claim discussed in Concepcion, but the Supreme Judicial Court focused on whether the particular claims at issue were individually viable as a matter of fact in this case. It dealt with the situation where class procedures are necessary to vindicate the plaintiffs’ claims. The logic of Concepcion, on the other hand, did not stray from the specific question on which the United States Supreme Court granted certiorari: “Whether the Federal Arbitration Act preempts States from conditioning the enforcement of an arbitration agreement on the availability of particular procedures—here, class-wide arbitration—when those procedures are not necessary to ensure that the parties to the arbitration agreement are able to vindicate their claims.” (Emphasis added.)[14] The two decisions answer different questions.
True, the Supreme Judicial Court cited Discover Banks “predictably . . . small” language, but Feeney stands on solid ground without that citation. I will not assume that citation to the now-overruled Discover Bank case infects the core holding of Feeney. Nor do I accept the defendants’ invitation to magnify one sentence in Concepcion, 131 S.Ct. at 1753,[15] into abroad rule preempting all state law unconscionability rules that prohibit use of Dell-like arbitration clauses. Such extrapolation is particularly inapt where that sentence was only a partial response to the dissenters’ views; the greater part of the response focused upon the provisions of the AT&T Arbitration Clause that—unlike the Dell Arbitration Clause—made the Concep-cions “better off under their arbitration agreement with AT&T than they would have been as participants in a class action ...” Id. In any event, such assumptions, invitations and extrapolations exceed the appropriate scope of the Trial Court’s task, when faced with Feeney's mandate. While the United States Supreme Court may have narrowed the breadth of some dicta in Feeney, the Supreme Judicial Court’s more narrowly stated holding survives Concepcion as applied to the facts of this case.
It may be objected that determining which disputes are too small to warrant arbitration under a Dell-type clause would require case-by-case analysis until deci-sional law provides more guidance. That problem inheres in our federal system, where implied conflict preemption depends upon proof of actual conflict with Congress’s design. Congress could presumably establish a bright line rule, perhaps even authorizing use of arbitration agreements in the preclusive manner allegedly attempted by Dell. It has not. In any event, there is already a safe harbor: adopting the kind of realistic arbitration scheme that the Court upheld in *658 Concepcion.[16] The judicial function does not include creating a blanket rule or bright line test here, in the absence of a statutory mandate and without proof of a conflict with the full purposes and objectives of Congress.
CONCLUSION
For the above reasons, the Defendants’ Renewed Motion to Confirm Arbitration Award of Dismissal With Prejudice is DENIED.

In light of Mr. Feeney’s death, the plaintiffs have moved to substitute another individual plaintiff. That motion will be the subject of a separate ruling. In any event, there is at least one plaintiff remaining, and the case remains a live one.

The paragraph reads, in relevant part:
ANY CLAIM, DISPUTE, OR CONTROVERSY (WHETHER IN CONTRACT, TORT, OR OTHERWISE, WHETHER PREEXISTING, PRESENT OR FUTURE, AND INCLUDING STATUTORY, COMMON LAW, INTENTIONAL TORT, AND EQUITABLE CLAIMS) AGAINST DELL, its agents, employees, successors, assigns, or affiliates (collectively for purposes of the paragraph “Dell”), arising from or relating to this agreement, its interpretation, or the breach, termination, or validity thereof, the relationships which result from this Agreement (including, to the full extent permitted by applicable law, relationships with third parties who are not signatories to this Agreement), Dell’s advertising, or any related purchase SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under its Code of Procedure then in effect. . . The arbitration will be limited solely to the dispute or controversy between Customer and Dell. Any award of the arbitrator(s) shall be final and binding on each of the parties and may be entered as a judgment in any court of competent jurisdiction. Information may be obtained and claims may be filed with the NAF . . .
The Supreme Judicial Court noted that “(t]he corresponding paragraph in the terms applicable to Dedham Health includes a provision concerning warranty claims that is not relevant to this appeal.” Feeney, 454 Mass. 195 n.10.

As the plaintiffs argue, the Supreme Judicial Court stated this holding neutrally, without any reference to arbitration. It is possible that such a neutral rule, so stated, “existís] at law or in equity for the revocation of any contract” (FAA, §2) and is exempt from preemption notwithstanding Concepcion, which dealt with a rule that addressed arbitration more directly. For purposes of this decision, I assume that this feature of Feeney’s holding does not, in itself, save it from preemption.

The judgment upon rescript read:
This action was appealed to the Supreme Judicial Court for the Commonwealth, the issues having been duly heard and the Supreme Judicial Court having duly issued a rescript, It is ORDERED and ADJUDGED: JUDGMENT after rescript: That the Arbitration clause is unenforceable but that plaintiffs failed to state a claim under G.L.c. 93A. The decision of the judge in the Superior Court compelling arbitration is reversed. That complaint of the plaintiffs be and hereby is dismissed without prejudice.

Dell’s position is somewhat ironic, given its insistence that the plaintiffs’ earlier failure to appeal a number of issues has waived a number of their arguments. Dell Memorandum, p. 7, citing Kraft v. Police Com'r of Boston, 417 Mass. 235, 242 (1994) (litigant who “had the opportunity to raise that question in his initial appeal . . . but did not do so,” waives the issue with respect to subsequent appeal); Levenson v. Brockton Taunton Gas Co., 5 Mass.App.Ct. 883, 883 (1977) (refusing to consider issue where litigant failed to raise issue in previous appeal); Blake v. Springfield Street Ry. Co., 9 Mass.App.Ct. 912, 913 (1980) (litigant “is foreclosed from raising” a question that “could have been raised in the first appeal”).

See Stifel, Nicolaus & Co., Inc. v. Woolsey & Co., 83 F.3rd 1540, 1545 (10th Cir. 1996) (“interlocutory orders denying arbitration have been deemed final and preclusive for res judicata purposes”). See also Towers, Perrin, Forster & Crosby Inc. v. Brown, 732 F.2d 345, 349-50 (3rd Cir. 1984) (reversing a district court order compelling arbitration since the state court’s order of denial was final).

I do not agree with the plaintiffs that Dell has waived the arbitration defense by omitting it from its answer to the third amended complaint. At the time of Dell’s answer, Feeney foreclosed that defense. Now that Concepcion has made the issue arguable once again, I would certainly allow Dell to amend its answer to plead arbitration. Cf. Feeney, 454 Mass. at 214 (allowing the plaintiffs to re-plead six years after commencement of this action).

I reject the plaintiffs’ argument that Concepcion is not controlling authority because this case arose in the state courts and Justice Thomas, who joined the Concepcion majority, votes against application of the FAA to state court proceedings. See, among other cases, Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 285 (1995) (Thomas, J., joined by Scalia, J., dissenting). Counting the votes of justices is always perilous. In any event, I assume that, if the Supreme Court were to consider this case on an issue-by-issue basis, as is its practice, there would be a majority to hold that the FAA applies to state court proceedings (Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)), and a differently-constituted majority to hold that the FAA preempts Discover Bank rule.

This case predated the effective date of the Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711-15 (“CAFA”). See Pub.L. 109-2, §9, 119 Stat. 14 (“The amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act [i.e. Feb. 18, 2005]”).

The parties concur that there is no agreement in this case that would allow class-based arbitration. See Feeney, 454 Mass. at 195 n.11.

By “Dell-type clause,” I mean a clause that essentially provides no incentive to arbitrate a very small claim, unlike the AT&T clause at issue in Concepcion.

This question is linked to the on-line docket for the Concepcion case and appears at: http://www.supremecourt.gOv/qp/09-00893qp.pdf (last visited September 30, 2011).

That sentence, quoted above, rejected the argument that “that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system.”

 increasing use of consumer-friendly agreements would not conflict with the FAA. If anything, it would “promote arbitration,” consistent with “a national policy favoring arbitration.” See Concepcion, 131 S.Ct. at 1749, citing Buckeye Check Cashing, Inc. v. Cardeno, 546 U.S. 440, 443 (2006).